UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joshua Bessette,

    Plaintiff,

    v.                                                                                  Civil Action No. 1:13-cv-252

Andrew Pallito,
Chris Billado,

    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 4, 12)

Plaintiff Joshua Bessette brings this action *pro se*, pursuant to 42 U.S.C. § 1983, against Defendant Andrew Pallito, Commissioner of the Vermont Department of Corrections ("DOC"), and Defendant Chris Billado, a Franklin County (Vermont) Probation Officer.  In his Complaint (Doc. 4) Bessette alleges that the DOC wrongfully denied him reintegration furlough under 28 V.S.A. § 808c(a), resulting in his incarceration for 161 days beyond his eligible release.  He also alleges that Billado defamed him by lying about programming and medical leave, and by accusing Bessette of "being a drug dealer [and a] murder suspect."  (Doc. 4 at 3.)  Bessette seeks to have the remainder of his sentence expunged, as well as $100,000 in damages.

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defendants argue that: (1) the Court lacks subject-matter jurisdiction over Bessette's claims; (2) Commissioner Pallito is absolutely immune from Bessette's state-

law tort claims; (3) Bessette has failed to allege a constitutional violation; (4) Bessette's official-capacity claims for damages are barred by the Eleventh Amendment; (5) Plaintiff's individual-capacity claims fail because Defendants lacked personal involvement; and (6) Bessette's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Doc. 12 at 3–9.) For the reasons stated below, I recommend that the Motion to Dismiss (Doc. 12) be GRANTED, that Bessette's § 1983 claim be DISMISSED, and that Bessette's defamation claim be DISMISSED without prejudice.

## Background

In order to understand the allegations in the Complaint, it is necessary to review the following provisions of Vermont law. Vermont's reintegration furlough ("RF") statute provides, in pertinent part, that:

> (1) To prepare for reentry into the community, an offender sentenced to incarceration may be furloughed to the community up to 180 days prior to completion of the minimum sentence, at the commissioner's discretion and in accordance with rules adopted pursuant to subsection (c) of this section. Except as provided in subdivision (2) of this subsection, an offender sentenced to a minimum term of fewer than 365 days shall not be eligible for furlough under this subdivision until the offender has served at least one-half of his or her minimum term of incarceration.
>
> (2) An offender sentenced to a minimum term of fewer than 365 days for an eligible misdemeanor as defined in section 808d of this title shall be eligible for furlough under this subdivision, provided the department has made a determination based upon a risk assessment that the offender poses a low risk to public safety or victim safety and that employing an alternative to incarceration to hold the offender accountable is likely to reduce the risk of recidivism.

28 V.S.A. § 808c(a).¹  Unlike conditional reentry furlough authorized by 28 V.S.A. § 808(a)(6), reintegration furlough authorizes furlough into the community *prior* to the offender's completion of his minimum term of sentence.²  However, like conditional reentry furlough, reintegration furlough is subject to the provisions of 28 V.S.A. § 808(c):

> The extension of the limits of the place of confinement authorized by this section shall in no way be interpreted as a probation or parole of the offender, but shall constitute solely a permitted extension of the limits of the place of confinement for offenders committed to the custody of the commissioner.

*See* 28 V.S.A. § 808(g) ("Subsections (b)–(f) of this section shall also apply to sections 808a and 808c of this title.").  The Court may take judicial notice of the policies promulgated by the DOC concerning reintegration furlough.  *See* Fed. R. Evid. 201(b), (d); *see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (explaining it is appropriate for district courts to take judicial notice of state prison rules and regulations).³

The Complaint and attached documents indicate the following.  Bessette began serving an incarcerative sentence in late 2012 or early 2013.  The details regarding the

---

¹ Additional credit towards RF is potentially available under § 808c(b), although that provision does not appear to play any role in Bessette's claim.

² Because RF is distinct from conditional reentry furlough, the Court should reject Bessette's assertions (Doc. 4-1 at 4, 5) that DOC Directive 371.15 applies.  That Directive concerns conditional reentry furlough, not reintegration furlough.  *See* "Conditional Re-Entry," #371.15 (2002), *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/371-375-programs-classification-and-case-planning/371.15-%20Directive-%20Conditional%20Re-entry.pdf.  The relevant DOC policies are noted below.

³ The relevant policies include "Granting Reintegration Furlough," #372 (2011), *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/371-375-programs-classification-and-case-planning/policy-372-granting-reintegration-furlough, and "Reintegration Furlough," #371.26 (2006), *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/371-375-programs-classification-and-case-planning/371.26%20Reintegration%20Furlough.pdf.  Although there is no indication that the 2011 policy supersedes the 2006 policy, I note that the 2006 policy predates the enactment of 28 V.S.A. § 808c.

3

underlying convictions and sentence are somewhat unclear.  According to Bessette, he was sentenced for "misdemeanor driving offenses," (Doc. 4-1 at 4), although there is some indication in the record that his sentence might have been for reckless endangerment, (*see id.* at 7).  It appears that Bessette's initial minimum sentence was 18 months.  (*See id.* at 3.)

Prior to June 18, 2013, DOC Director Dale Crook granted Bessette reintegration furlough under 28 V.S.A. § 808c(a), on the condition that Bessette complete certain programming.[4]  After a June 18, 2013 court hearing on sentence reconsideration, Bessette's minimum sentence was reduced to nine months; his minimum release date was accordingly set for September 25, 2013.

Since Bessette's new minimum term was for fewer than 365 days, he was, according to the Complaint, eligible for reintegration furlough after completing four and a half months of incarceration (one-half of his nine-month minimum).[5]  However, as of June 2013—after serving more than four and a half months—Bessette had still not been released on reintegration furlough.

---

[4] The initial grant of RF must have been pursuant to 28 V.S.A. § 808c(a)(1), since at that time Bessette's minimum sentence was for more than 365 days.

[5] It is not entirely clear whether Bessette also alleges that he was eligible for immediate release on RF under 28 V.S.A. § 808c(a)(2).  The allegations in the Complaint do not definitively establish entitlement to RF under subdivision (a)(2).  For instance, there is some suggestion in the record that Bessette's sentence might have been for "reckless endangerment."  (*See* Doc. 4-1 at 7.)  "Reckless endangerment" as defined in 13 V.S.A. § 1025 is not an "eligible misdemeanor" under 28 V.S.A. § 808d(5).  Even assuming that Bessette's sentence was for an "eligible misdemeanor," there is no allegation or indication in the record that the DOC made the requisite "determination based upon a risk assessment that the offender poses a low risk to public safety or victim safety and that employing an alternative to incarceration to hold the offender accountable is likely to reduce the risk of recidivism."  28 V.S.A. § 808c(a)(2).  Ultimately, the precise subdivision of § 808c(a) that might apply is not material, since Bessette's claim is that he was eligible for RF in all cases before June 2013.

Bessette filed an informal complaint on June 28, 2013. Staff responded: "Put a request form in to speak with your caseworker." (Doc. 4-1 at 1.) Bessette indicated that he had already done that. He filed a grievance on June 30, 2013, stating that his caseworker, Jeff Poginy, had emailed his probation officer (presumably Defendant Billado) but had not received a response. Bessette asserted that he had "no programming to complete," and that he should therefore be released on reintegration furlough. (*Id.* at 2.)

Poginy was assigned to investigate the grievance. He spoke with Director Crook and reviewed other materials. On July 23, 2013, Poginy made the following findings and recommendation:

> Upon initial sentencing Mr. Bessette was given an 18 [month] minimum with a recommendation that he participate in needs reducing programming. Director Crook approved RF at this time based on the fact that he complete programming first. Since then Mr. Bessette has returned to court for sentence reconsideration and his minimum was reduced to 9 [months]. With credit for time served he does not have enough time to complete needs reducing programming therefore Director Crook has denied RF.

(*Id.* at 3.) The Grievance Coordinator agreed with Poginy's recommendation, and denied Bessette's grievance.

On July 26, 2013, Bessette filed an appeal to Commissioner Pallito. (*See id.* at 5.) On August 10, 2013, he filed an appeal to the Facilities Executive. (*See id.* at 4.) He also wrote a letter to the Governor. (*See id.* at 6.) According to the Complaint, Bessette received no satisfactory response at any level. (Doc. 4 at 4.)

5

It is not clear from the Complaint precisely when Billado made the allegedly defamatory statements. As noted above, Bessette claims that Billado defamed him by lying about programming and medical leave, and by accusing Bessette of "being a drug dealer [and a] murder suspect." (*Id.* at 3.) According to the Complaint, Billado's statements caused the DOC to refuse to grant RF to Bessette. (*Id.*)

Meanwhile, Bessette also instituted a suit in Vermont Superior Court, filing a petition on July 8, 2013.[6] In an "Amended Petition for Rule 75 Review" dated August 13, 2013, Bessette asserted that he was being held in violation of the reintegration statute, and sought release on reintegration furlough. (Doc. 4-1 at 7–8.) On August 20, 2013, the Vermont Parole Board granted Bessette parole. The Superior Court docket sheet indicates that Bessette dismissed his Rule 75 petition on August 26, 2013. Bessette filed his § 1983 case in this Court on September 17, 2013.

## Analysis

### I. Applicable Legal Standards

Bessette has filed no opposition to the Defendants' Motion to Dismiss, but his failure to do so does not by itself warrant dismissal. The Court is still required to review the Motion and determine whether the Court has jurisdiction, and whether the Complaint is sufficient to state a claim on which relief can be granted. *See McCall v. Pataki*, 232 F.3d 321, 322–33 (2d Cir. 2000).

---

[6] The date of Bessette's initial filing in Vermont Superior Court does not appear in this Court's record, but is publicly available on the "Vermont Courts Online" website, available at https://secure.vermont.gov/vtcdas/user. The Court may take judicial notice of the docket sheet in the Vermont Superior Court action because it is a public record and because Bessette's Complaint incorporates documents from that case. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

6

### A.     Rule 12(b)(1) Motion to Dismiss

"'A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Local 817*, No. 13-2038-cv, 2014 WL 350050, at *2 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In reviewing a Rule 12(b)(1) motion to dismiss, the Court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to the plaintiff[]." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

### B.     Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007). "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

Where, as here, the plaintiff is proceeding *pro se*, courts are obligated to construe the pleadings liberally. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Nevertheless, a *pro se* plaintiff's complaint must still state a claim to relief that is plausible on its face. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## II.   Subject-Matter Jurisdiction

Defendants argue that, because Bessette and all Defendants are citizens of Vermont, there is no basis for diversity jurisdiction under 28 U.S.C. § 1332. Defendants also argue that Bessette's defamation claim against Billado is a state-law tort claim that presents no federal question under 28 U.S.C. § 1331. Those two points appear to be beyond dispute. Defendants concede, however, that under a liberal construction of Bessette's Complaint, he may be asserting a federal constitutional claim. As the Second Circuit has noted, federal-question jurisdiction is proper where the plaintiff brings a claim pursuant to the United States Constitution and 42 U.S.C. § 1983. *Ford v. Reynolds*, 316 F.3d 351, 353 (2d Cir. 2003). Defendants argue, however, that Bessette has failed to state a claim for any constitutional violation. (Doc. 12 at 3.) The inquiry thus collapses into whether Bessette has failed to state a claim under Rule 12(b)(6).

### III. Whether Bessette Has Failed to State a Claim

#### A. Liberty Interest in RF; Consequence of Alleged Deprivation

Defendants contend that Bessette has failed to allege a constitutional violation. In order to state a § 1983 claim, a plaintiff must allege, among other things, that he was subjected to the deprivation of "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Here, Bessette is asserting that Defendants violated his due process rights by not immediately releasing him on reintegration furlough after his minimum sentence was reduced to nine months. (*See* Doc. 4 at 4.) To plead a substantive due process claim, a plaintiff must assert that: (1) a "constitutionally cognizable property [or liberty] interest is at stake," and (2) defendants' "alleged acts . . . were arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). To plead a procedural due process claim, a plaintiff must allege: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). To determine whether a prisoner has articulated a protected liberty interest, the Court examines whether the State has created such an interest by statute or regulation, and whether the alleged deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Defendants argue that there is no liberty interest in furlough. It does indeed appear that the Vermont Supreme Court has found no federal due process liberty interest

9

in retaining furlough status.  *See State v. Bogert*, 2013 VT 13, ¶ 28, *available at* http://info.libraries.vermont.gov/supct/current/op2011-253.html ("In contrast to a probationer, an individual on furlough has no statutorily or constitutionally protected right to remain on conditional reentry status, and is subject to reincarceration at the discretion of the Commissioner of Corrections with no due process protections." (citing 28 V.S.A. § 808(c) and *Conway v. Cumming*, 161 Vt. 113, 119, 636 A.2d 735, 738 (1993))).  However, the Vermont Supreme Court's decision does not relieve this Court of its independent obligation to determine Bessette's due process rights under the Federal Constitution.  *Bock v. Gold*, 408 F. App'x 461, 463 (2d Cir. 2011) (citing *Holcomb v. Lykens*, 337 F.3d 217, 222 n.5 (2d Cir. 2003)).

"[W]hether a certain program of conditional release creates a constitutionally protected interest is a fact-bound inquiry."  *Id.*  This Court has noted the discretionary nature of furlough in Vermont, and has concluded that, given the DOC's "unbridled discretion" with respect to furlough applicants, inmates do not have any "legitimate expectation of release" entitling them to due process protection.  *Rheaume v. Pallito*, No. 5:11-CV-72, 2011 WL 6934821, at *5 (D. Vt. Nov. 28, 2011) (conditional reentry), *adopted* 2011 WL 6936201 (D. Vt. Dec. 30, 2011); *Elliott v. Vt. Dep't of Corr.*, No. 1:08-CV-42, 2008 WL 5104203, at *3 (D. Vt. Nov. 6, 2008) (reintegration furlough), *adopted* 2008 WL 5101772 (D. Vt. Dec. 2, 2008); *Johnson v. Hofman*, No. 2:07-CV-261, 2008 WL 2901329, at *3 (D. Vt. July 22, 2008) (furlough).  The Court has suggested that, where a prisoner was previously released on furlough and furlough was subsequently revoked, the analysis might be different.  *See Elliott*, 2008 WL 5104203, at *3 n.1.  Here,

10

however, there is no allegation that Bessette had actually been released on RF and "begun to enjoy any of the freedoms" that might make his release sufficiently analogous to the liberty interest of a person on parole. *Johnson*, 2008 WL 2901329, at *3.

Even if some liberty interest in RF was created, the alleged deprivation did not impose an atypical and significant hardship upon Bessette. It appears from the Complaint that, although Director Crook granted RF conditioned on completion of certain programming, that condition was not satisfied before Director Crook denied RF. Here, as a result of that denial, Bessette "simply continue[d] in the regular prison program." *Lee v. Governor of State of N.Y.*, 87 F.3d 55, 58 (2d Cir. 1996). Thus the denial of RF did not result in an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

The above conclusions are sufficient to warrant dismissal of Bessette's § 1983 claim. I nevertheless briefly address the other grounds for dismissal articulated by Defendants.

### B. Eleventh Amendment

Defendants maintain that, under the Eleventh Amendment, they cannot be sued for damages in their official capacities. Indeed, the Eleventh Amendment does generally prohibit plaintiffs from recovering in federal court damages against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) ("[A] claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment."). There are exceptions to that general rule. A state may

11

waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985). In addition, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). However, Vermont has expressly preserved its immunity under the Eleventh Amendment, *see, e.g.*, 12 V.S.A. § 5601(g), and Congress did not intend to abrogate sovereign immunity by enacting § 1983, *see Quern v. Jordan*, 440 U.S. 332, 340–41 (1979).

Since neither exception applies, it would be proper to grant Defendants' Motion insofar as it seeks dismissal of any claims Bessette might be making for money damages against Defendants in their official capacities. Of course, that conclusion would not warrant dismissal of the case, since Bessette seeks injunctive relief, and since Bessette's Complaint could reasonably be construed as seeking damages against Defendants in their individual capacities.

### C.   *Heck*'s "Favorable Termination" Rule

Defendants assert that the "favorable termination" rule articulated in *Heck v. Humphrey*, 512 U.S. 477 (1944), applies to bar any of Bessette's constitutional claims that call into question the validity of his sentence. Stated succinctly, "*Heck* generally bars a § 1983 suit that 'necessarily demonstrates' the invalidity of a conviction or sentence '*unless* the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *McKithen v. Brown*, 481 F.3d 89, 101 n.13 (2d Cir. 2007) (quoting *Heck*, 512 U.S. at 481, 487). Defendants appear to assert that Bessette's release on RF impacts the length of his sentence, and that his Complaint is thus barred because he

12

cannot show that the denial or RF has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.

The Court should reject that argument because *Heck* does not apply. Nothing about Bessette's claim that he was improperly denied RF "necessarily demonstrates" the invalidity of his conviction or sentence. *See Ladd v. Thibault*, No. 1:08-cv-255, 2009 WL 3248143, at *6 (D. Vt. Oct. 6, 2009) ("As with other temporary release programs administered by prisons, the Vermont [conditional release] program is a condition of confinement, and the *Heck* rule does not apply."). The Court should decline to dismiss any portion of the Complaint on the basis of *Heck*.

### D.    Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, a plaintiff must "allege a tangible connection between the acts of [the] defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). For the reasons described above, there was no constitutional deprivation arising out of the denial of RF to Bessette. However, even if there was, it would be proper to grant Defendants' Motion on the grounds that the Complaint fails to allege personal involvement.

As to Defendant Billado, the Complaint alleges that he made defamatory statements that caused the DOC to refuse to grant RF to Bessette.  Facially, that allegation is an assertion of a connection between Billado's alleged defamatory statements and the injury that Bessette says he suffered (the denial of RF).  But the allegation is insufficient because it is conclusory.  Bessette does not allege any facts from which one might be able to conclude that the statements did in fact cause the denial of RF.  In fact, other materials in the Complaint suggest that RF was denied because it was impossible for Bessette to complete the programming that Director Crook had required as a condition of the earlier grant of RF.  In any case, the alleged defamation does not state a cause of action under § 1983.  *See Brooks v. Dunn*, 376 F. Supp. 976, 978–79 (W.D. Va. 1974) (where chairman of furlough committee denied plaintiff's application on the basis of his "extensive F.B.I. record," plaintiff's allegation that the statement was defamatory failed to state a cause of action under § 1983).

The only involvement alleged with respect to Commissioner Pallito is that he did not grant the relief that Bessette sought in his appeal dated July 26, 2013.  Thus Bessette is suing Commissioner Pallito as a supervisory defendant.  Commissioner Pallito "cannot be held personally liable under § 1983 on the basis of *respondeat superior*" or simply because he "sits atop the prison hierarchy." *Thompson v. Pallito*, 949 F. Supp. 2d 558, 573 (D. Vt. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995)).  However, the Second Circuit has held that:

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) *the defendant, after being informed of the*

14

> *violation through a report or appeal, failed to remedy the wrong,* (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) *the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.*

*Grullon*, 720 F.3d at 139 (quoting *Colon*, 58 F.3d at 873). To the extent that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), might have eliminated or altered any of the *Colon* avenues for showing a supervisor's personal involvement, that is a non-issue in this case because, for the reasons described below, the Complaint does not adequately plead Commissioner Pallito's personal involvement even under *Colon*.

As to Commissioner Pallito, the only potentially applicable *Colon* categories are the second and fifth. However, Commissioner Pallito's failure to act on the July 26, 2013 appeal or to "remedy the wrong" alleged in that appeal is insufficient. "[A] supervisory official having received (and ignored) a letter from an inmate alleging unconstitutional conduct does not, without more, give rise to personal involvement on the part of that official." *Thompson*, 949 F. Supp. 2d at 575. "The reason for this rule appears to be the fact that high-level DOCS officials delegate the task of reading and responding to inmate mail to subordinates, and, thus, a letter sent to such an official often does not constitute actual notice." *Id.* (quoting *Voorhees v. Goord*, No. 05 Civ. 1407(KMW)(HBP), 2006 WL 1888638, at *5 (S.D.N.Y. Feb. 24, 2006)). "[I]mposing liability upon a supervisory official for failing to respond to an inmate's letter or grievance would contravene the black-letter principle that § 1983 does not allow for *respondeat superior* liability." *Id.* at 576.

15

For the above reasons, dismissal of Bessette's claims against Defendants would be appropriate for the additional reason that the Complaint fails to allege that Defendants were personally involved in the alleged constitutional deprivation.

## IV.   State-Law Claim

In addition to his § 1983 claim, Bessette is asserting a defamation claim against Defendant Billado.[7]  As noted above, that is a state-law (tort) claim.  If the Court agrees with the above conclusions regarding Bessette's federal claim, the Court should decline to retain supplemental jurisdiction over the pendent state-law defamation claim.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims.").

## V.   Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks

---

[7] Defendants may be correct in arguing (Doc. 12 at 4) that Commissioner Pallito is absolutely immune from any state-law tort claims.  The Court need not decide that issue, however, because the Complaint does not allege any state-law claim against Commissioner Pallito.

16

omitted); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Nonetheless, leave to amend may be denied in certain circumstances, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

Here, if the only basis for granting Defendants' Motion were that the Complaint failed to allege personal involvement, it might make sense to grant leave to amend. However, Bessette's § 1983 claim rests on the validity of his due process argument. As described above, that argument is fundamentally untenable; Bessette never obtained a liberty interest in RF, nor did the denial of RF result in an "atypical and significant hardship." Additional allegations or arguments would therefore have no impact on the strength of that claim. I therefore recommend that the Court decline to grant him leave to amend his Complaint.

## Conclusion

For the reasons set forth above, I recommend that Defendants' unopposed Motion to Dismiss (Doc. 12) be GRANTED. Accordingly, Bessette's Complaint (Doc. 4) should also be DISMISSED with prejudice on the § 1983 claim, and without prejudice on the defamation claim.

Dated at Burlington, in the District of Vermont, this 4th day of March, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).